UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | No. |
| v. | ) | |
| | ) | |
| FUNDS IN THE AMOUNT OF $26,300 | ) | |
| IN UNITED STATES CURRENCY, | ) | |
| | ) | |
| Defendant. | ) | **JURY TRIAL DEMANDED** |

**VERIFIED COMPLAINT FOR FORFEITURE**

The United States of America, by John R. Lausch, Jr., United States Attorney for the Northern District of Illinois, for its verified complaint against the above-named defendant funds alleges in accordance with Supplemental Rule G(2) of the Federal Rules of Civil Procedure as follows:

**Nature of the Action**

1.      This is a forfeiture *in rem* brought pursuant to 21 U.S.C. § 881(a)(6), for forfeiture of funds in the amount of $26,300.

2.      This complaint is verified by the attached affidavit of Task Force Officer ("TFO") R. Mark Brunzie of the Drug Enforcement Administration ("DEA"), which is fully incorporated herein.

**Jurisdiction and Venue**

3.      This Court has jurisdiction over an action commenced by the United States as the plaintiff under 28 U.S.C. § 1345, and over an action for forfeiture *in rem* under 28 U.S.C. § 1355(a).

4.     This Court has *in rem* jurisdiction over the defendant funds pursuant to 28 U.S.C. § 1355(b)(1)(A), as certain of the acts giving rise to the forfeiture occurred within the Northern District of Illinois.

5.     Venue is proper under 28 U.S.C. §§ 1355(b)(1)(A) and 1395(a) as certain of the acts giving rise to the forfeiture occurred within the Northern District of Illinois, and 28 U.S.C. § 1395(b) as the defendant funds were found within the Northern District of Illinois.

6.     The defendant funds are subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) as the funds (i) were furnished and intended to be furnished in exchange for a controlled substance; and/or (ii) are the proceeds from the sale of a controlled substance; and/or (iii) were funds used and intended to be used to facilitate illegal drug trafficking, in violation of 21 U.S.C. § 841, *et seq.*

## Factual Allegations

7.     On November 20, 2017, DEA agents assigned to the DEA Transportation Interdiction Group ("DEA Group") at Midway Airport in Chicago, Illinois, were alerted to the suspicious travel itinerary of Deangelo Donell Crenshaw ("Crenshaw").

8.     Specifically, Crenshaw was scheduled to travel on November 20, 2017, from Hebron, Kentucky to Las Vegas, Nevada via Chicago, Illinois, on Southwest Airlines flight numbers 1917 and 1358.   Crenshaw purchased the one-way ticket approximately 12 hours prior to the flight.   Additionally, Crenshaw was known to have several prior narcotic arrests from Kentucky and was on probation in Kentucky for a 2017 conviction for drug trafficking.

9.     According to the affiant, a trained DEA task force officer, illegal drug couriers often purchase tickets a day or so prior to the scheduled departure.   Additionally, based upon the affiant's training and experience, Nevada, and in particular Las Vegas, is a known source region for illegal drug trafficking.   Finally, based upon the affiant's training and experience, those who

transport illegal drugs, or the proceeds of illegal drug trafficking, often keep illegal drugs and/or proceeds on their person or accompanying bags or suitcases. Based upon the above information, agents sought to conduct a consensual interview of Crenshaw while he was at Midway Airport.

10. On November 20, 2017, at approximately 6:20 p.m., TFOs Brunzie and Phillip Paolino and Special Agent ("SA") Luis Mendez proceeded to Midway Airport terminal, Gate B-17, to interview Crenshaw. At the time, the agents were dressed in civilian clothing with no weapons, radios, or other police equipment displayed.

11. At this time, TFO Paolino proceeded to the jetway of flight number 1997 in attempt to locate any luggage Crenshaw may have checked-in with the airline.

12. TFO Brunzie and SA Mendez approached an individual later confirmed to be Crenshaw, and identified themselves verbally and displayed their credentials and badges to him. TFO Brunzie explained to Crenshaw that he was not under arrest, was not in any kind of trouble, and did not have to speak any further with the agents. Crenshaw stated he understood and agreed to talk to the agents.

13. Initially, TFO Brunzie requested to see Crenshaw's boarding pass and a form of photo identification. Crenshaw produced his cellular phone which contained a boarding pass bearing his name and a Kentucky driver's license bearing his name and photo likeness. TFO Brunzie noted the information and immediately returned the items to Crenshaw.

14. TFO Brunzie asked Crenshaw where he was traveling to and the purpose of his travel. Crenshaw stated that he was traveling to Las Vegas to visit friends and gamble. When TFO Brunzie asked Crenshaw how long he was staying in Las Vegas, Crenshaw stated a few days. Crenshaw further stated that he did not have a reservation, although he was looking to stay at the MGM hotel.

3

15.     When TFO Brunzie observed Crenshaw did not have any luggage with him other than a small fanny pack, TFO Brunzie asked Crenshaw if he was traveling alone.   Crenshaw responded "yes."   When TFO Brunzie asked Crenshaw if he had any checked luggage, Crenshaw stated "no."   The agents knew this was a false statement based on earlier information they received stating that Crenshaw had checked one bag with Southwest Airlines.   TFO Brunzie asked Crenshaw where his clothing was located as he stated he was going to stay in Las Vegas a few days.   Crenshaw stated his "peoples" would provide him clothes.

16.     When TFO Brunzie asked Crenshaw if he packed his fanny pack himself, Crenshaw responded "yes."   TFO Brunzie then asked Crenshaw when he purchased his ticket.   Crenshaw stated "a few days ago."   Again, agents knew this was a false statement because they had already received information that Crenshaw purchased his ticket less than 12 hours before the flight.

17.     TFO Brunzie asked Crenshaw if he had any prescription drugs or electronics in his fanny pack or on his person.   Crenshaw stated that he did not have any drugs, but he did have two cellular phones.

18.     Next, TFO Brunzie asked Crenshaw if he was carrying any weapons of any kind, illegal drugs, or large amounts of currency in his fanny pack or on his person.   Crenshaw answered "no" to these questions.

19.     At this time, TFO Brunzie asked Crenshaw if he would consent to a search of his fanny pack to confirm that he did not possess any of the items discussed.   Crenshaw stated "yes, go right ahead."   SA Mendez searched Crenshaw's fanny pack with negative results.

20.     SA Mendez telephoned TFO Paolino to inform him that Crenshaw told the agents he did not have a checked bag.   TFO Paolino stated to SA Mendez that he located Crenshaw's checked bag and described it as a silver hard case "OP" roller bag that was locked.   Additionally,

4

TFO Paolino advised SA Mendez that the bag had a Southwest Airlines tag bearing Crenshaw's name.

21.     When TFO Brunzie again asked Crenshaw if he checked any bags at the Southwest gate while he was in Cincinnati/Northern Kentucky Airport, Crenshaw again responded "no." TFO Brunzie thanked Crenshaw for his cooperation and stated he was free to leave and continue his travels.

22.     At approximately 6:50 p.m., TFO Brunzie and SA Mendez reunited with TFO Paolino near gate B-17, who was in possession of Crenshaw's checked bag.   The agents carried the bag to gate A-18, which was where the outgoing flight to Las Vegas, Nevada was departing from, in order to make contact with Crenshaw again.

23.     TFO Brunzie observed Crenshaw sitting in the area of gate A-18 with his head down and his legs twitching up and down.   When TFO Brunzie requested to speak to him, Crenshaw agreed.   TFO Brunzie, along with SA Mendez and TFO Paolino walked with Crenshaw to a secure area to discuss the contents inside Crenshaw's checked bag.

24.     TFO Brunzie asked Crenshaw why he gave false statements to law enforcement officers regarding his checked bag.   Crenshaw stated that he was caught off guard by TFO Brunzie's questions and thought he was referring to his carry-on bag.   TFO Brunzie reminded Crenshaw that he was asked at the beginning and at the end of the interview if he had any checked bags, and both times Crenshaw stated "no."

25.     Next, TFO Brunzie asked Crenshaw if the bag TFO Paolino was holding was his checked bag.   Crenshaw took a deep breath and responded "yes."   When TFO Brunzie asked Crenshaw if he had any weapons of any kind, illegal drugs, electronics or large amounts of currency in his checked bag, Crenshaw stated there was money inside his checked bag.   TFO

Brunzie asked Crenshaw how much money was inside the bag and Crenshaw stated about $14,000. Crenshaw also stated that the money was for gambling.

26.     TFO Brunzie then asked Crenshaw for permission to search his bag to verify his statements.   Crenshaw agreed, and handed the key to the "OP" roller bag to TFO Paolino.   At this time, TFO Paolino discovered large amounts of currency, concealed in various pants pockets. TFO Brunzie told Crenshaw that there appeared to more than $14,000 in his bag.   Crenshaw now stated that there may be $16,000 to $18,000 in his luggage. *See Government Exhibits 1-4.*

27.     When TFO Brunzie asked Crenshaw how he obtained the currency, Crenshaw stated that some of the currency came from savings and some came from an injury settlement from a car accident.   TFO Brunzie asked Crenshaw if he had any paperwork in regards to the injury settlement and Crenshaw stated "no."   Next, Brunzie asked Crenshaw if he was in possession of any bank receipts showing the withdrawal of the currency.   Crenshaw stated that he saved the currency and never put it in a bank.

28.     TFO Brunzie informed Crenshaw that he was not under arrest, but that the currency was going to be seized for further investigation.   TFO Brunzie asked Crenshaw if he would accompany the agents to the DEA office at Midway for further questioning and to obtain a receipt for the currency.   Crenshaw agreed to accompany the agents to the DEA office.

29.     While walking to the DEA office, TFO Brunzie asked Crenshaw what he did for a living.   Crenshaw stated that he was a barber.   When TFO Brunzie asked Crenshaw if he owned a business, Crenshaw responded "no."   Crenshaw stated he had worked for Downtown Barbershop in Louisville, Kentucky for the past four years.

30.     When TFO Brunzie asked Crenshaw if he filed taxes in 2016, Crenshaw stated "no," but he had filed taxes in 2015.   When TFO Brunzie asked Crenshaw how much he claimed he earned in 2015, Crenshaw stated he earned approximately $34,000.

31.     Once inside the DEA office, Crenshaw was provided with, and signed a "Consent to Search" form, indicating that he freely consented to the search of his luggage and person.   *See attached Government Exhibit A*.

32.     Additionally, agents provided Crenshaw with, and he signed, a "Disclaimer of Ownership" form, indicating that he did not have a claim or legal interest to the seized property. *See attached Government Exhibit B*.   At no time did Crenshaw identify an individual by the name of Taj Allen as having interest in the cash.

33.     The agents escorted Crenshaw to the Southwest Airlines ticketing counter, so that he could rebook his ticket back to Cincinnati/Northern Kentucky Airport.   Crenshaw advised the agents that there was no reason for him to continue his travels to Las Vegas, Nevada.

34.     On November 20, 2017, at approximately 7:01 p.m., Illinois State Police Trooper Anthony Muzzillo and his canine "Maverick" conducted an illegal drug odor investigation of United States currency recovered from Crenshaw's luggage.   Maverick gave a positive alert for the presence of an illegal drug odor from the seized currency.

35.     Illegal drug detector dog Maverick was last certified by the Illinois State Police before this investigation on May 5, 2017.   Maverick is trained in the detection of the odor of cannabis, cocaine, crack, methamphetamine and heroin.   Within the past six months, Maverick has made approximately 33 narcotic and narcotics-related detections of currency and has had several instances of no detection.

7

36.     In total, $26,300 in United States currency was recovered from Crenshaw's "OP" roller bag in the following denominations: 19 one hundred dollar bills, 9 fifty dollar bills, 1,152 twenty dollar bills, 89 ten dollar bills and 4 five dollar bills.

37.     Crenshaw has numerous convictions for drug-related offenses in 1996, 2002, 2005, 2010, and 2017.   At the time of this seizure, Crenshaw was on parole as a "consistent felony offender" under Kentucky statutes.

## Conclusion

38.     For the reasons stated herein and in the attached affidavit, funds in the amount of $26,300: (i) were furnished and intended to be furnished in exchange for a controlled substance; and/or (ii) are the proceeds from the sale of a controlled substance; and/or (iii) were used or intended to be used to facilitate an illegal drug transaction in violation of 21 U.S.C. § 841, *et seq.*, and therefore are subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6).

WHEREFORE, the United States of America requests:

a.      the funds be proceeded against for forfeiture and condemnation;

b.      due notice be given to all interested parties to appear and show cause why the forfeiture should not be decreed;

c.      this Court adjudge and decree that the defendant funds be forfeited to the United States and disposed of according to law; and

d.      any trial be before a jury.

Respectfully submitted,

JOHN R. LAUSCH, Jr.
United States Attorney

By:/s/ Daniel E. May
    DANIEL E. MAY
    Assistant United States Attorney
    219 South Dearborn Street, 5th Floor
    Chicago, Illinois 60604
    312-353-8694
    daniel.may@usdoj.gov

NORTHERN DISTRIT OF ILLINOIS    )
                                )    SS
COUNTY OF COOK                  )

## AFFIDAVIT

I, M. Ronald Brunzie, having first been duly sworn, upon oath, depose and state as follows:

1.      I am a Task Force Officer with the Drug Enforcement Administration and have been so assigned since 2014.   My duties and responsibilities as a Task Force Officer with DEA involve investigation of alleged violations of the Controlled Substances Act, Title 21 of the United States Code.   I am also a police officer with the Lockport, Illinois Police Department and have been so employed for approximately 24 years.   As part of my duties as a Lockport police officer, I have been assigned for several years as a tactical officer involved in investigations of the Illinois Controlled Substances Act and the Cannabis Control Act.

2.      I have read the complaint in this matter and the facts alleged are true and correct to the best of my knowledge, information, and belief based upon my own personal knowledge as well as information I have received from other sources.   Because this affidavit is for the limited purpose of establishing that this property is subject to forfeiture, it does not include each and every fact known to me concerning this investigation or the conversations described therein.

3.      I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on the ____1____ of March, 2018, in Chicago, Illinois.


M. RONALD BRUNZIE
Task Force Officer
Drug Enforcement Administration

# Exhibit 1



GOVERNMENT
EXHIBIT

# Exhibit 2



GOVERNMENT
EXHIBIT
2

# Exhibit 3



Exhibit 4



GOVERNMENT
EXHIBIT
4

# Exhibit A

U.S. DEPARTMENT OF JUSTICE
DRUG ENFORCEMENT ADMINISTRATION

**CONSENT TO SEARCH**

1.   I HAVE BEEN ASKED TO PERMIT SPECIAL AGENTS OF THE DRUG ENFORCEMENT
ADMINISTRATION TO SEARCH:  (Describe the person, places or things to be searched.)

- The person of DeAngelo Donnell Crenshaw

- Jansport - Black Bag "OP"

- Silver hardcase

2.   I HAVE NOT BEEN THREATENED, NOR FORCED IN ANY WAY.

3.   I FREELY CONSENT TO THIS SEARCH.

_11-20-17_
Date

Signature

Witnesses:

DEA Form          Previous edition obsolete.
(Oct. 1983)  - 88

GOVERNMENT
EXHIBIT
A

# Exhibit B

## Disclaimer of Ownership

I, _DeAngelo Donnell Crawshaw_ by my signature below, indicate that

_United States Currency_ which was seized by Agents/Officers
(Item That Was Seized)

_11-20-17_ at _5700 Cicero Ave_ _Chgo_,
(Date)      (Street Location)      (City)

_Ill_ and will be inventoried by the above agency, does not belong to
(State)

me. I further state that I have no claim or legal interest to this seized item,

and that I have no knowledge pertaining to the owner and/or origin of above

stated item. I am signing this affidavit voluntarily and of my own free will.

Signed: _____
(Signature Of Person From Whom Item Was Recovered)

On this date of: _11-20-17_ Time: _7:20 p_ a.m./p.m.

Signed at: _DEA/MDW Office 5700 Cicero Ave, Chgo_
(Location Where Document Was Signed)

Witnessed by: X _TFO Nick Xie_

Witnessed by: _TFO_ _____

Case Number: _It-18-0038_

Exhibit #: N - _1_

